MKB:EMN
F.#2007R02041

M0C-0070

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - X

UNITED STATES OF AMERICA

       - against -

BOB ROOSEVELT RAMSEY,
    also known as "O.G.,"
ANTHONY ELLIS,
    also known as
    "Michael Jones" and
    "Anthony Jameson,"
MICHAEL ALVARADO and
RICHARD CARIAS,

       Defendants.

- - - - - - - - - - - - - - - X

COMPLAINT

(21 U.S.C. § 846; 18
U.S.C. § 922(a)(1)(A))

EASTERN DISTRICT OF NEW YORK, SS:

       JON BENJAMIN HUNT, being duly sworn, deposes and states that he is a Special Agent with the Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF"), duly appointed according to law and acting as such.

       Upon information and belief, in or about and between November 2007 and January 2008, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, BOB ROOSEVELT RAMSEY, also known as "O.G.," ANTHONY ELLIS, also known as "Michael Jones" and "Anthony Jameson," MICHAEL ALVARADO and RICHARD CARIAS, together with others, did knowingly and intentionally conspire to distribute and possess with intent to distribute 50 grams or more of a substance containing cocaine

base ("crack" or "crack cocaine"), a Schedule II controlled substance, in violation of Title 21, United States Code, Section 841(a)(1).

(Title 21, United States Code, Section 846).

Upon information and belief, in or about and between September 2007 and December 2007, within the Eastern District of New York and elsewhere, BOB ROOSEVELT RAMSEY, also known as O.G.," not being a licensed importer, licensed manufacturer or licensed dealer in firearms, did knowingly and willfully engage in the business of dealing in firearms.

(Title 18, United States Code, Section 922(a)(1)(A)).

The source of your deponent's information and the grounds for his belief are as follows:

1.  I have been a Special Agent with ATF for approximately three and a half years. In the course of my tenure with ATF, I have been involved in numerous firearms and narcotics-related investigations and prosecutions. In the course of those and other investigations, I have conducted physical surveillance, supervised or participated in undercover transactions, executed search warrants, debriefed cooperating defendants and confidential informants, reviewed taped conversations and firearms and narcotics records, and secured other relevant information using other investigative techniques.

2.  I have personally participated in the

2

investigation of the offenses discussed below. I am familiar with the facts and circumstances of this investigation from: (a) my personal participation in this investigation, (b) reports made to me by other law enforcement authorities, (c) information obtained from a confidential informant and other confidential sources of information, and (d) physical surveillance conducted by ATF and reports of physical surveillance conducted by others.

3. Except as explicitly set forth below, I have not distinguished in this affidavit between facts of which I have personal knowledge and facts of which I have hearsay knowledge. Because this affidavit is being submitted for the limited purpose of establishing probable cause for the arrest of the above-specified defendants, I have not set forth each and every fact learned during the course of this investigation. Instead, I have set forth only those facts which I believe are necessary to establish probable cause for the arrest.

4. Since approximately August 2007, other law enforcement agents and I have been investigating an individual suspected of the illegally trafficking of firearms and sale of crack cocaine in Brooklyn and Queens, New York. During the course of this investigation, we have been working with a confidential informant ("CI"), who has been involved in purchases

of firearms and crack cocaine from the defendant.[1]

September 2007 Transaction

5. On or about September 16-17, 2007, the CI contacted RAMSEY, who the CI then knew as O.G., and arranged to purchase a .380 pistol for $450 from BOB ROOSEVELT RAMSEY. On or about September 18, 2007, agents observed a meeting between RAMSEY and the CI in the vicinity of Atlantic Avenue and Hicks Street in Brooklyn, New York. In a recorded conversation, RAMSEY stated, in sum and substance, that he did not have the .380 pistol yet but offered to sell the CI a Lorcin 9mm pistol for $650. The CI told RAMSEY that he/she wanted the Lorcin 9mm pistol but only had $450 with him/her. RAMSEY accepted the $450 on the condition that the CI pay him an additional $200 the next day. RAMSEY sold the CI the Lorcin 9mm pistol, which had an obliterated serial number.[2] After the deal was completed, RAMSEY left in a white Ford Winstar, New York license plate ECB4237. Approximately one hour later, law enforcement agents conducted a traffic stop of the Ford Winstar and identified "O.G." as BOB ROOSEVELT RAMSEY.

---

[1] I and other ATF agents have worked with the CI for approximately nine years. The information the CI has provided has proven reliable in this and other investigations and has been corroborated as demonstrated herein.

[2] Agents previously provided the $450, and all other sums of money discussed herein, to the CI. The CI met with law enforcement agents immediately after each transaction discussed herein.

6. On or about September 20, 2007, during a recorded meeting, RAMSEY and the CI met again in the vicinity of Atlantic Avenue and Hicks Street in Brooklyn, New York. The CI provided the additional $200 for the Lorcin 9mm pistol he/she had purchased from RAMSEY two days previously. In a recorded conversation, RAMSEY told the CI the serial number for the pistol and explained how he had obliterated the serial number.

October 2007 Transaction

7. After this transaction, the CI contacted RAMSEY to arrange another firearms purchase. On or about October 26, 2007, law enforcement agents observed the CI meet with RAMSEY, again in the vicinity of Atlantic Avenue and Hicks Street in Brooklyn, New York. Agents observed RAMSEY arrive in a black Honda Accord, Virginia license plate KBU-8700, exit the car carrying a white bag and approach the CI, who was sitting in another car. RAMSEY entered the CI's car. According to the CI, RAMSEY gave him/her a .380 Lorcin pistol and a half box of .380 ammunition, for which the CI paid RAMSEY $600.

8. During the same transaction, which was recorded, the CI told RAMSEY that "I need money." RAMSEY said, "You need money man, you're in the wrong business." RAMSEY explained that he had a source for crack and "that's where the money's at." The CI asked for a price and RAMSEY said he would find out and get back in touch with the CI.

5

November 2007 Transaction

9.  After this transaction, the CI contacted RAMSEY to arrange a transaction to purchase crack cocaine. On or about November 29, 2007, in a meeting recorded by video and audio, RAMSEY met with the CI and sold him/her crack cocaine. RAMSEY and the CI met in the vicinity of Atlantic Avenue and Hicks Street in Brooklyn, New York. I and other agents observed RAMSEY arrive in the same black Honda Accord as he did during the October 2007 transaction, followed by a black Lexus GS3, New Jersey license plate VSN-42A. We observed RAMSEY exit his car, walk up to the Lexus, stick his hand inside the passenger window, bring his hand back out and put something in his pocket. RAMSEY then walked around the corner to where the CI was parked and got into the CI's car. RAMSEY provided the CI with a substance RAMSEY said was 23 grams of crack cocaine (but was subsequently determined to be approximately 20 grams of crack cocaine), for which the CI paid RAMSEY $690. RAMSEY then exited the CI's car and walked back to the Lexus. An unknown male got out of the Lexus and had a conversation with RAMSEY. RAMSEY appeared to hand the individual the money he had received from the CI. After a brief conversation, RAMSEY and the individual shook hands and drove off in their separate cars.

December 2007 Transactions

10.  After this transaction, the CI contacted RAMSEY to

6

arrange another transaction to purchase crack cocaine. On or about December 3, 2007, law enforcement agents observed the CI meet with RAMSEY in the vicinity of Atlantic Avenue and Hicks Street in Brooklyn, New York. At that time, the CI provided $1,600 to RAMSEY in exchange for a substance RAMSEY said was 50 grams of crack cocaine (but was subsequently determined to be approximately 43 grams of crack cocaine). During the recorded meeting, RAMSEY and the CI discussed a future deal for additional crack. RAMSEY said, in sum and substance, that he wanted to meet at a new location because he was nervous that the police in the area affiliated with Long Island College Hospital were noticing him.

11. After this transaction, the CI contacted RAMSEY to arrange another crack purchase. On or about December 13, 2007, law enforcement agents observed the CI meet with RAMSEY in a parking lot in the vicinity of Hamilton Place, between 12th and 13th Streets, in Brooklyn, New York. RAMSEY arrived in the same black Honda Accord and met with the CI, who had arrived separately. In a recorded discussion, RAMSEY explained that the baby in the back seat of the car was his son. Subsequently, a white Hyundai Sonata, New York license plate BZC-8152, pulled up next to where RAMSEY and the CI were parked. RAMSEY walked up to the Hyundai and spoke with an unknown male in the front passenger seat. RAMSEY then walked over to the CI's car and got inside.

During the recorded meeting, RAMSEY provided the CI with a substance he said was crack cocaine, which the CI weighed on a portable scale. The CI said it was only 45 grams, whereupon RAMSEY returned to the Hyundai to speak with the unknown male. The unknown male then got out of his car, walked over to the CI's car, got inside and gave the CI what appeared to be an additional 5 grams of crack. The CI paid $1600 for the substance, which, in total, has field-tested positive for approximately 50 grams of crack cocaine.

12.  After the CI, RAMSEY and the unknown male discussed a future deal for a firearm, they each eventually left the parking lot in their separate cars. Law enforcement agents subsequently conducted a traffic stop of the Hyundai Sonata. The unknown male in the front passenger seat identified himself as "Anthony Jameson." The law enforcement agent who conducted the traffic stop has subsequently visually identified "Anthony Jameson" as the defendant ANTHONY ELLIS.

13.  After this transaction, the CI contacted RAMSEY to arrange another firearms purchase. On or about December 17, 2007, law enforcement agents observed the CI meet with RAMSEY in the vicinity of Hamilton Place, between 12th and 13th Streets, in Brooklyn, New York. Agents observed RAMSEY arrive in the same black Honda Accord, exit the car and approach the CI, who was sitting in another car. RAMSEY entered the CI's car. RAMSEY

gave the CI a .32 Davis pistol for which the CI paid RAMSEY $650.

January 2008 Transaction

14. After this transaction, the CI contacted RAMSEY to arrange another purchase of crack cocaine. RAMSEY and the CI arranged to meet again in the parking lot in the vicinity of Hamilton Place, between 12th and 13th Streets, in Brooklyn, New York on or about January 23, 2008 to exchange 250 grams of crack cocaine for $7,500.

15. On or about January 23, 2008, law enforcement agents observed the CI meet with RAMSEY, in the vicinity of Hamilton Place, between 12th and 13th Streets, as planned. RAMSEY entered the parking lot in the same black Honda Accord and pulled up next to the CI's car. RAMSEY and the CI had a brief, monitored conversation. RAMSEY then received a telephone call, after which he told the CI that he had to go find the people he was expecting who called to say they were lost. RAMSEY then re-entered his car and left the parking lot.

16. Agents observed RAMSEY drive approximately one block away. Soon thereafter, two other cars pulled up near RAMSEY's car: a blue Acura 3.2 TL driven by defendant MICHAEL ALVARADO, New York license plate CEA2219 and a silver Mitsubishi Galant driven by defendant RICHARD CARIAS, New York license plate DNM8191. Agents observed ELLIS get out of the front passenger seat of the Acura and enter RAMSEY's car. ELLIS and RAMSEY

appeared to speak for a few minutes, and then ELLIS got out of RAMSEY's car. RAMSEY then drove back to the parking lot. The Acura and Mitsubishi followed him but did not enter the parking lot. RAMSEY pulled up next to the CI's car and gave the CI a black plastic bag containing two smaller clear plastic bags containing a substance that RAMSEY said contained 250 grams of crack cocaine (but has subsequently field-tested positive for approximately 150 grams of crack cocaine), for which the CI paid RAMSEY $7500. The CI and RAMSEY then left the parking lot separately. Agents observed RAMSEY meet again with the Acura and Mitsubishi approximately one block away. ELLIS got out of the Acura and got into RAMSEY's car, whereupon law enforcement agents arrested RAMSEY, ELLIS, ALVARADO and CARIAS.

17. After the arrest, agents recovered approximately $1,740 from RAMSEY and $5,760 from ELLIS, both amounts comprised of currency bearing the same serial numbers as the $7,500 that agents provided to the CI. Agents also recovered from ELLIS an additional bag of a substance that has subsequently field-tested positive for approximately 20 grams of crack cocaine.

18. In a post-arrest statement, CARIAS told law enforcement agents, in sum and substance, that: ALVARADO contacted CARIAS the same morning and asked CARIAS to meet him at the corner of Throop Avenue and Pulaski Street in Brooklyn, New York and act as a backup for a "drop." CARIAS agreed and knew

the drop involved something illegal and suspected that it involved either firearms or narcotics.

WHEREFORE, your deponent respectfully requests that the defendants BOB ROOSEVELT RAMSEY, ANTHONY ELLIS, MICHAEL ALVARADO and RICHARD CARIAS be dealt with according to law.

JON BENJAMIN HUNT
Special Agent
Bureau of Alcohol, Tobacco,
Firearms and Explosives

Swor
24th                              )8


HONORABLE STEVEN M. GOLD
UNITED STATES MAGISTRATE JUDGE
EASTERN DISTRICT OF NEW YORK

11